# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

JOSHUA JAMES BRADSHAW,

    Plaintiff,

  v.

NANCY DAHLSTROM, et al.,

    Defendants.

No. 3:20-cv-00292-SLG-KFR

## FINDINGS AND RECOMMENDATIONS

The Court recommends that Plaintiff's First Amended Complaint seeking injunctive relief against restrictions on gatherings and visitation inside Alaska correctional facilities imposed in March 2020 in response to the COVID-19 pandemic be dismissed as moot. In April 2021, during the pendency of this case, the Alaska Department of Corrections voluntarily withdrew the challenged regulations, thereby permitting gatherings and visitation within Plaintiff's correctional facility. Given that group gatherings and visitation have been restored, that the restoration of those activities was not a response to Plaintiff's complaint, and that the reimposition of similar restrictions is unlikely to recur, there is no longer a live case or controversy for this Court to adjudicate. Accordingly, as it relates to Plaintiff's demands for injunctive relief, the First Amended Complaint should be dismissed as moot.

Plaintiff also seeks money damages from former DOC Commissioner Dahlstrom for her role in limiting religious gatherings within Plaintiff's place of confinement. However, Plaintiff fails to state how Commissioner Dahlstrom personally participated in violating his rights. As a result, the Court recommends granting in part Defendants' motion to dismiss Plaintiff's claim for money damages against Commissioner Dahlstrom in her individual capacity, and giving Plaintiff leave to amend this claim.

## I. Procedural History

On November 16, 2020, *pro se* Plaintiff, Joshua James Bradshaw, filed a complaint against the Commissioner of the Department of Corrections ("DOC"), Nancy Dahlstrom; the Governor of Alaska, Michael Dunleavy; and DOC alleging violation of 42 U.S.C. § 1983 and the Alaska Constitution.[1] On February 22, 2021, the Court issued a screening order dismissing Mr. Bradshaw's complaint without prejudice, advising him of the elements he must plead if he chose to amend his complaint, and granting him time to do so.[2]

On February 23, 2021, Plaintiff filed a motion for a temporary restraining order and preliminary injunction, which the Court denied.[3] Plaintiff then filed his First Amended Complaint on March 22, 2021.[4] Plaintiff alleges in his First Amended Complaint that broad policies implemented by Defendants in response to the COVID-19 pandemic limiting group gatherings inside DOC facilities and restricting visitation violated his First Amendment and Fourteenth Amendment rights, in addition to violating the Alaska Constitution and a previously-imposed Alaska state court order. Specifically, Plaintiff alleges in Claim One that Commissioner Dahlstrom's ban on religious gatherings within DOC facilities violated his right to free exercise of religion under the First Amendment. In Claim Two, Plaintiff alleges that mandates imposed by Governor Dunleavy limiting rehabilitation programming and visitation within DOC facilities violated his rights under the Alaska Constitution and the Cleary Settlement Agreement. Finally, Plaintiff alleges that Governor Dunleavy violated his right to procedural due process under the Fourteenth Amendment as it relates to his First Amendment free exercise claim.[5] Plaintiff requested a trial by jury and sought injunctive relief from all Defendants for each claim, as well as money damages from

---

[1] Dkt. 1. Mr. Bradshaw also filed a Memorandum in Support of Complaint at Dkt. 4.
[2] Dkt. 6.
[3] Dkts. 7 and 12.
[4] Dkt. 10.
[5] *Id.*

Final R&R on Motion to Dismiss 2
*Bradshaw v. Winkelman, et al.*
3:20-cv-00292-SLG-KFR

Case 3:20-cv-00292-SLG-KFR   Document 51   Filed 09/02/22   Page 2 of 13

Commissioner Dahlstrom as it related to his allegations in Claim One.

On April 5, 2021, the Court issued an order provisionally appointing counsel and stayed the screening of Plaintiff's First Amended Complaint to give counsel time to meet with his client, file a notice of appearance, and review and amend the complaint again if needed.[6] Counsel for Plaintiff filed a notice of appearance on April 12, 2021, followed by a status report advising the Court that Plaintiff wished to proceed on his First Amended Complaint as previously filed.[7]

On October 12, 2021, Defendants filed a motion to dismiss.[8] After requesting additional time to respond, Plaintiff filed his response on December 6, 2021, and Defendants responded with a motion to strike that response.[9] Plaintiff opposed Defendants' motion to strike.[10] After counsel for Plaintiff filed a Rule 11 certification and a notice of withdrawal, the Court ordered counsel's withdrawal and denied Defendants' motion to strike.[11]

Defendants replied to Plaintiff's response to Defendants' motion to dismiss, followed by a supplemental response by Plaintiff.[12] Defendants filed a motion to strike Plaintiff's supplemental response, and Plaintiff again opposed.[13]

On June 29, 2022, this Court *sua sponte* ordered supplemental briefing on the issue of mootness.[14] Specifically, the Court asked the parties to address whether DOC's revocation of the policies complained about by Plaintiff rendered his complaint moot.[15] Plaintiff timely filed his supplemental briefing on July 29, 2022.[16]

---

[6] Dkt. 13.
[7] Dkts. 14 and 16.
[8] Dkt. 24.
[9] Dkts. 25-29.
[10] Dkt. 30.
[11] Dkts. 32-35.
[12] Dkts. 36-37.
[13] Dkts. 38-39.
[14] Dkt. 42; *see Students for a Conservative Am. v. Greenwood*, 391 F.3d 978 (9th Cir. 2004) ("We have an independent duty to consider *sua sponte* whether a case is moot.") (citation omitted).
[15] *Id.*
[16] Dkt. 44.

Final R&R on Motion to Dismiss 3
*Bradshaw v. Winkelman, et al.*
3:20-cv-00292-SLG-KFR

Case 3:20-cv-00292-SLG-KFR   Document 51   Filed 09/02/22   Page 3 of 13

After being granted an extension, Defendants filed their supplemental briefing on August 29, 2022.[17]

After referral from the District Court,[18] this Court now considers Defendants' Motion to Dismiss at Docket 24. For the reasons stated herein, this Court recommends dismissing as moot each of the claims raised in Plaintiff's First Amended Complaint at Docket 10 where he seeks injunctive relief; specifically, his official capacity claim against Acting DOC Commissioner Winkelman in Claim One,[19] and Claims Two and Three against Governor Dunleavy. The Court also recommends granting Defendants' Motion to Dismiss as it relates to the individual capacity claim against Commissioner Dahlstrom, but granting Plaintiff leave to amend his complaint for this distinct claim only.

## II. Statement of Facts[20]

On March 11, 2020, Governor Dunleavy, pursuant to his authority under Alaska Statute 26.23.020(c), declared a "public health disaster emergency" (hereinafter "Disaster Declaration").[21] On March 13, 2020, pursuant to his authority under the Disaster Declaration, Governor Dunleavy issued COVID-19 Health Mandate

---

[17] The Court granted Defendant's late-filed motion for an extension of time to file their supplemental briefing. On August 16, 2022, Plaintiff filed an opposition to Defendant's motion for an extension of time. Dkt. 49.

[18] Dkts. 40-41.

[19] *Id.* Plaintiff originally named Department of Corrections Commissioner Nancy Dahlstrom in his First Amended Complaint. On May 22, 2022, Commissioner Dahlstrom resigned. Pursuant to Fed. R. Civ. P. 26(d), Acting Commissioner Winkelman is "automatically substituted as a party" and the Court considers her the proper defendant in Claim One for Plaintiff's official capacity claim against the DOC Commissioner. However, because Plaintiff has sued Commissioner Dahlstrom for money damages in her individual capacity, she remains a party as it relates to that distinct claim.

[20] The Court takes judicial notice of the facts described herein detailing the State of Alaska's response to the COVID-19 pandemic. This information consists of public documents issued by State of Alaska officials that are readily available online and whose accuracy are not subject to reasonable dispute. For purposes of this order, the Court assumes as true Plaintiff's statements regarding his loss of access to religious services and visitation.

[21] *See* https://gov.alaska.gov/newsroom/2020/03/11/governor-issues-public-health-disaster-emergency-declaration-for-covid-19/ (containing link to online copy of proclamation) (all websites cited herein were last visited August 31, 2022).

Final R&R on Motion to Dismiss 4
*Bradshaw v. Winkelman, et al.*
3:20-cv-00292-SLG-KFR
Case 3:20-cv-00292-SLG-KFR  Document 51  Filed 09/02/22  Page 4 of 13

1.1 suspending visitation at all DOC facilities effective March 14, 2020.[22] On that same day, DOC issued a press release stating that all visitation to DOC facilities was "temporarily suspended," to include visitation by "outside volunteers and other tours and groups who routinely come into the institutions."[23] On March 18, 2020, DOC suspended "non-essential contract services and all volunteers."[24]

Plaintiff is an inmate at Lemon Creek Correctional Center (LCCC), a DOC facility located in Juneau, Alaska, and has been since at least April 15, 2020.[25] As a result of the suspension of visitation, Plaintiff lost access to group religious gatherings within LCCC, visitation by volunteer groups performing religious and rehabilitative services, and personal contact visits.[26]

On April 19, 2021, DOC reopened public visitation at LCCC and many other facilities for those inmates who had been fully vaccinated, and on April 28, 2021, DOC reopened visitation to all inmates regardless of vaccination status at all facilities other than the Anchorage Correctional Complex.[27] On April 30, 2021, Governor Dunleavy signed an executive proclamation ending the Disaster Declaration "effective immediately."[28]

//
//
//
//

---

[22] *See* https://gov.alaska.gov/newsroom/2020/03/13/governor-issues-first-covid-19-health-mandate/ (containing link to online copy of proclamation).
[23] *See* https://doc.alaska.gov/covid-19, Department of Corrections Implements Mitigation & Response Plan for COVID-19.
[24] *See* https://doc.alaska.gov/covid-19, Department of Corrections Suspends All Non-Essential Activity.
[25] *See* Dkt. 1.
[26] Dkt. 10 at 3-5, 8-10, and 13-15.
[27] *See* https://doc.alaska.gov/covid-19 (DOC Reopens Public Visitation) and https://doc.alaska.gov/covid-19 (DOC Fully Opens Visitation).
[28] *See* https://gov.alaska.gov/newsroom/2021/04/30/governor-dunleavy-ends-alaska-covid-19-emergency-declaration-signs-house-bill-76/ (containing link to online copy of proclamation).

Final R&R on Motion to Dismiss
*Bradshaw v. Winkelman, et al.*
3:20-cv-00292-SLG-KFR
5

Case 3:20-cv-00292-SLG-KFR   Document 51   Filed 09/02/22   Page 5 of 13

### III. Legal Standard and Analysis

#### a. Mootness

"The mootness doctrine 'requires that an actual, ongoing controversy exist at all stages of federal court proceedings.' '[I]f events subsequent to the filing of the case resolve the parties' dispute, [the court] must dismiss the case as moot[.]'"[29] "Mootness is a jurisdictional issue, and federal courts have no jurisdiction to hear a case that is moot."[30] A claim is moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome."[31]

A case may be mooted when one party stops performing or enforcing the challenged activity. However, "[t]he voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed."[32] Voluntary cessation can yield mootness if a "stringent" standard is met: "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."[33]

In addition to the voluntary cessation doctrine, an exception to mootness exists when an issue is "capable of repetition, yet evading review."[34] "In order for [this] exception to apply, (1) the duration of the challenged action or injury must be too short to be fully litigated; and (2) there must be a reasonable likelihood that the same party will be subject to the action again."[35] Like the voluntary cessation doctrine, the "capable of repetition, yet evading review" doctrine "traces to the

---

[29] *Leigh v. Salazar*, 677 F.3d 892, 896 (9th Cir. 2012) (alterations in *Leigh*) (internal citation omitted) (quoting *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1086 (9th Cir. 2011)).
[30] *Johnson v. Oishi*, 362 F.Supp.3d 843, 848 (E.D. Cal. 2019).
[31] *Id.*
[32] *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2015); *see also Already, LLC. v. Nike, Inc.*, 568 U.S. 85, 91 (2013) ("[A] defendant cannot automatically moot a case simply by ending its unlawful conduct once sued.")
[33] *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).
[34] *Native Village of Nuiqsut v. Bureau of Land Mgmt.*, 9 F.4th 1201, 1209 (9th Cir. 2021).
[35] *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1287 (9th Cir. 2013) (cleaned up).

Final R&R on Motion to Dismiss
*Bradshaw v. Winkelman, et al.*
2:20-cv-000292-SLG-KFR
6

Case 3:20-cv-00292-SLG-KFR   Document 51   Filed 09/02/22   Page 6 of 13

principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior."[36]

### i. The Voluntary Cessation Exception to Mootness Is Inapplicable.

Plaintiff admits that DOC has reinstated visitation and group religious services.[37] Nonetheless, Plaintiff seeks an "order [from the Court that Defendants] comply with the Cleary Final Settlement agreement," and "an official judgment" from this Court that Defendants "pay attention and change their bad behavior and their policies."[38] Plaintiff argues that such an order is necessary, in part, to prevent Defendants from "commit[ing] the same acts again," thereby forcing Plaintiff "to go through the litigation process again."

The Court finds that DOC's rescission of the policies at issue in this case, and the resumption of visitation, along with the religious and rehabilitative programs Plaintiff claims were denied to him unlawfully during the height of the COVID-19 pandemic, renders his case moot for those causes of action in which he seeks injunctive relief, thereby denying the Court jurisdiction over those matters. This includes Plaintiff's claims for injunctive relief against Commissioner Winkelman in Claim One, and the entirety of his claims against Governor Dunleavy in Claims Two and Three.

It is true that Defendants rescinded their group gathering and visitation policies approximately one month after Plaintiff filed his First Amended Complaint on March 22, 2021.[39] However, the voluntary cessation doctrine precluding mootness does not apply as there is no evidence in the record DOC temporarily rescinded its COVID policies in response to either Plaintiff's original complaint or his First Amended Complaint. Rather, the evidence indicates that this action was

---

[36] *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n.1 (2001).
[37] Dkt. 44 at 8, 10.
[38] *Id.* at 3-4.
[39] Dkts. 1, 10.

Final R&R on Motion to Dismiss 7
*Bradshaw v. Winkelman, et al.*
3:20-cv-00292-SLG-KFR
Case 3:20-cv-00292-SLG-KFR   Document 51   Filed 09/02/22   Page 7 of 13

taken in response to public health conditions that existed in the State of Alaska and within DOC facilities at the time of the policies' rescission, not as a result of any pending litigation.[40]

Moreover, even if the voluntary cessation doctrine did apply, the Court finds that Defendants have met their burden of demonstrating that "the challenged behavior cannot reasonably be expected to recur."[41] This is so for two reasons.

First, unlike other cases in which mootness has not been found, no policy remains on the books to be reinstated.[42] By virtue of Governor Dunleavy's April 30, 2021 proclamation, the Disaster Declaration and Health Mandate 1.1 no longer remain in effect. Moreover, the Alaska legislature has expressly withdrawn the authority under which the Disaster Declaration persisted beyond its initial 30-day implementation.[43]

Second, DOC has reopened correctional facilities even while COVID variants linger within the State of Alaska with sometimes high levels of community transmission.[44] DOC facilities have remained open despite the fact that COVID case counts have ebbed and surged at various times since the rescission of Health

---

[40] *See* https://gov.alaska.gov/newsroom/2021/04/30/governor-dunleavy-ends-alaska-covid-19-emergency-declaration-signs-house-bill-76/ (containing link to online copy of proclamation which cites mitigation efforts by state and introduction and distribution of effective vaccines as reasons to withdraw disaster declaration).

[41] *Already*, 568 U.S. at 96.

[42] *Compare Department of Fish and Game v. Federal Subsistence Board*, 501 F.Supp.3d 671, 684-85 (D. Alaska, Nov. 18 , 2020) (denying mootness challenge in case in which hunt was completed, but complained of delegation remained in effect for 9 additional months).

[43] *See* Alaska House Bill (HB) 76, extending public health disaster emergency until December 31, 2021, but stating that the governor shall proclaim an emergency no longer exists upon a certification by the commissioner of health and social services of such a situation); *see also Brach v. Newsom*, 38 F.4th 6, 13 (9th Cir. 2022) (finding that the fact that the legislature included a "sunset provision" and "self-repeal" trigger in the bill authorizing pandemic shutdowns of schools weighed in favor of concluding that the State of California's actions "cannot reasonably be expected to recur.")

[44] *See* https://health.alaska.gov/dph/Epi/id/Pages/COVID-19/covidandflu.aspx describing "widespread" transmission of COVID-19 "in most parts of Alaska); *see also Brach*, 38 F.4th at 14 (citing the fact that California kept schools open through the COVID omicron surge as evidence that voluntary cessation of challenged policy was not pretextual).

Final R&R on Motion to Dismiss 8
*Bradshaw v. Winkelman, et al.*
3:20-cv-00292-SLG-KFR

Case 3:20-cv-00292-SLG-KFR   Document 51   Filed 09/02/22   Page 8 of 13

Mandate 1.1.[45] This indicates to the Court a desire among State of Alaska officials to move away – and stay away - from pandemic restrictions in an effort to return as quickly as possible to a pre-COVID normal.[46] This is not a case in which Plaintiff "remains under constant threat" that DOC will reinstate the challenged policies.[47]

The Court recognizes that Defendants retain the power to declare future emergencies or reimpose limits on visitation and group gatherings within DOC facilities. However, such executive power "cannot itself be enough to skirt mootness, because then no suit against the government would ever be moot."[48] The recent practice of DOC to maintain group gatherings and visitation in the face of recent COVID-19 surges, and the government's representation in Docket 50 that the circumstances which precipitated the March 13, 2020 public health disaster declaration were "limited," "unique," and "extraordinary" makes any concern that such policies might be reenacted too "remote and speculative" to provide a basis for this court's jurisdiction.[49] There is simply insufficient evidence in the record to

---

[45] *See* State of Alaska COVID-19 Cases Dashboard at https://experience.arcgis.com/experience/af2efc8bffbf4cdc83c2d1a134354074/ (showing an increase from 23 daily cases on June 10, 2021, to 939 cases on September 21, 2021, followed by a decrease to 118 cases on December 19, 2021, followed by a surge to 3,021 cases on January 21, 2022).

[46] *Tandon v. Newsom*, ---- U.S. ----, 141 S.Ct. 1294, 1297 (2021) (denying mootness challenge where California officials had a "track record of 'moving the goalposts'" (quoting *South Bay United Pentecostal Church v. Newsom*, 592 U.S. ---, 141 S.Ct. 716, 720 (2021) (statement of GORSUCH, J.))); *see also Roman Catholic Diocese of Brooklyn*, 592 U.S. ----, ----, 141 S.Ct. 63, 68 (2020) (per curiam) (denying mootness challenge where New York regulations were frequently changed and Plaintiff's lived under "constant threat" that restrictions would be reimposed).

[47] *See Tandon*, ---- U.S. ----, 141 S.Ct. at 1294 (quoting *Roman Catholic Diocese of Brooklyn*, 592 U.S. at ----, 141 S.Ct. at 68 (2020) (per curiam); *see also High Plains Harvest Church v. Polis*, 592 U. S. ---, 141 S.Ct. 527 (2020).

[48] *Brach*, 38 F.4th at 14 (quoting *Bos. Bit Labs, Inc. v. Baker*, 11 F.4th 3, 10 (1st Cir. 2021).

[49] *Id.* (quoting *Lee v. Schmidt-Wenzel*, 766 F.2d 1387, 1390 (9th Cir. 1985)). The Court notes that while the burden remains the same, the voluntary cessation of challenged activity by government officials is treated "with more solicitude … than similar action by private parties." *See Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1198 (9th Cir. 2019) (en banc) (omission in original) (internal quotation marks omitted); *see also Bell v. City of Boise*, 709 F.3d 890, 898–99 & n.13 (9th Cir. 2013).

Final R&R on Motion to Dismiss  9
*Bradshaw v. Winkelman, et al.*
3:20-cv-00292-SLG-KFR
Case 3:20-cv-00292-SLG-KFR   Document 51   Filed 09/02/22   Page 9 of 13

"indict[e] that the challenged [policies] likely will be reenacted."[50]

### ii. The Capable of Repetition Yet Evading Review Doctrine Does Not Apply.

Similarly, there is no indication that the challenged restrictions meet the necessary elements to escape mootness under the "capable of repetition yet escaping review" doctrine. For the reasons described above, this Court cannot find that there is a "reasonable likelihood" that Plaintiff will be subject to the same restrictions on gatherings, rehabilitation programs, and visitation that were previously imposed.[51] The regulations limiting gatherings and visitation within DOC have been rescinded, the authority for those restrictions has been withdrawn by the legislature, and the State of Alaska has demonstrated a desire not to reimpose the restrictions even while the COVID-19 pandemic that necessitated the State's action persists. The mere possibility that Defendants may reinstate restrictions on Plaintiff's activities in response to future events is an insufficient basis upon which to argue that a live controversy exists.[52]

### b. 42 U.S.C. § 1983 Standard

Mootness does not generally apply to claims for monetary damages.[53] As a result, the Court is left to analyze Plaintiff's remaining claim – that Commissioner Dahlstrom should be held liable for money damages in her individual capacity as the person who "created and implemented" the policy Plaintiff claims "unjustly and

---

[50] *Id.* (quoting *Larsen v. U.S. Navy*, 525 F.3d 1, 4 (D.C. Cir. 2008) (citation omitted)).

[51] *See Armster v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 806 F.2d 1347, 1360 n. 20 (9th Cir. 1986) (noting that the voluntary cessation and the capable of repetition yet evading review exceptions are "analogous").

[52] *See Foster v. Carson*, 347 F.3d 742, 748 (9th Cir. 2003) ("[A] mere possibility that something might happen is too remote to keep alive a case as an active controversy."); *see also Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (stating that a "[r]easonable expectation means something more than a mere physical or theoretical possibility."); *Best Supplement Guide, LLC v. Newsom*, 2022 WL 2703404 (9th Cir. July 12, 2022);

[53] *See Lokey v. Richardson*, 600 F.2d 1265, 1266 (9th Cir. 1979) (per curiam) (holding that, although claim for injunctive relief was mooted, case was not moot because plaintiff prayed for damages and, regardless of actual damages, plaintiff could be entitled to nominal damages).

Final R&R on Motion to Dismiss 10
*Bradshaw v. Winkelman, et al.*
3:20-cv-00292-SLG-KFR

Case 3:20-cv-00292-SLG-KFR   Document 51   Filed 09/02/22   Page 10 of 13

without reason restricted [him] from participating in any group religious activities inside any Alaska correctional institution."[54] Title 42 U.S.C. § 1983 is a federal statute that "is not itself a source of substantive rights," but provides "a method for vindicating rights [found] elsewhere."[55] For relief under 42 U.S.C. § 1983, a plaintiff must "plead that (1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes."[56] To act under the color of state law, a complaint must allege that the defendants acted with state authority as state actors.[57]

In a § 1983 action, a defendant may be sued in either their individual or official capacity. A defendant sued in her individual capacity may be held liable for money damages.[58] In order for a defendant to be individually liable under § 1983, that defendant must personally participate in an alleged rights deprivation.[59] "In a § 1983 action, the plaintiff must also demonstrate that the defendant's conduct was the actionable cause of the claimed injury."[60]

Plaintiff fails to meet this standard. In substance, Claim One of Plaintiff's First Amended Complaint against Commissioner Dahlstrom in her individual capacity mirrors the allegations contained in his original Complaint as they relate to this defendant, which the Court previously screened and dismissed without prejudice, and for which the Court provided guidance to Plaintiff about the elements needed in a properly pled § 1983 claim.[61] While Plaintiff does include additional information about his own religious beliefs and practices in his First Amended Complaint, he

---

[54] Dkt 10 at 4.
[55] *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).
[56] *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986).
[57] *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).
[58] *See Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016).
[59] *Avalos v. Baca*, 596 F.3d 583, 587 (9th Cir. 2010).
[60] *Harper v. City of Los Angeles,* 533 F.3d 1010, 1026 (9th Cir. 2008).
[61] Dkt. 6.

Final R&R on Motion to Dismiss
*Bradshaw v. Winkelman, et al.*
3:20-cv-00292-SLG-KFR
11

Case 3:20-cv-00292-SLG-KFR   Document 51   Filed 09/02/22   Page 11 of 13

once again fails to articulate how Commissioner Dahlstrom personally participated in depriving him of his rights or causing his alleged injury, which he must for an individual capacity claim.[62] A claim that Commissioner Dahlstrom "created and implemented" the policy about which Plaintiff complains is insufficient to establish individual liability under § 1983.[63]

### IV. Conclusion

The Court recommends that Plaintiff's First Amended Complaint as it relates to the injunctive relief sought against Acting Commissioner Winkelman in Claim One, and against Governor Dunleavy in Claims Two and Three be **DISMISSED AS MOOT**. The DOC policies limiting gatherings, rehabilitation programs, and visitation within DOC no longer remain in effect and there is no indication that they are reasonably likely to be reenacted. There is no longer a live case or controversy as it relates to these claims and the Court no longer has jurisdiction over them.

The Court also recommends **GRANTING IN PART** Defendants' Motion to Dismiss at Docket 24 as it relates to Plaintiff's Claim One against Commissioner Dahlstrom in her individual capacity. Plaintiff's First Amended Complaint fails to state how Commissioner Dahlstrom personally participated in the deprivation of his rights, and therefore fails to state a claim upon which relief can be granted. However, given Plaintiff's *pro se* status, the Court recommends Plaintiff be afforded leave to amend as it relates to this distinct claim only, and be provided with appropriate guidance on how to either amend his complaint or file a voluntary notice of dismissal, along with the appropriate paperwork from the Clerk's Office for completing either action.[64] The Court recommends **DENYING IN PART AS MOOT**

---

[62] Dkt. 10 at 3-5.

[63] *Id.* at 4

[64] In the event the District Court adopts the Court's Findings and Recommendations as they relate to the recommendation to dismiss the individual capacity claim against Commissioner Dahlstrom with leave to amend, the Court directs Plaintiff to the original screening order at Docket 6 for guidance on the elements necessary for a properly pled claim.

Final R&R on Motion to Dismiss 12
*Bradshaw v. Winkelman, et al.*
3:20-cv-00292-SLG-KFR
Case 3:20-cv-00292-SLG-KFR   Document 51   Filed 09/02/22   Page 12 of 13

the remainder of Defendants' Motion to Dismiss as it relates to the official capacity claims in light of the recommendation to dismiss as moot those claims in Plaintiff's First Amended Complaint.

DATED this 2nd of September 2022, at Anchorage, Alaska.

*s/* Kyle F. Reardon
KYLE F. REARDON
United States Magistrate Judge
District of Alaska

This Report and Recommendation is being issued as a Final Report and Recommendation. Pursuant to Fed. R. Crim P. 59(b)(3), any objections will be considered by the District Court Judge who will accept, reject, or modify the recommendation following de novo review. Any objections must be filed within seven (7) days from the date of service of this Report and Recommendation. The shortened objection deadline is due to the request of the District Court Judge. Fed. R. Crim P. 59(b)(2) and D. Ak. L.M.R. 6(a) authorizes the court to alter the standard objection deadlines.

Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.[65]

---

[65] *See Hilliard v. Kincheloe*, 796 F.2d 308 (9th Cir. 1986).

Final R&R on Motion to Dismiss
*Bradshaw v. Winkelman, et al.*
3:20-cv-00292-SLG-KFR
13

Case 3:20-cv-00292-SLG-KFR   Document 51   Filed 09/02/22   Page 13 of 13