# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JOSHUA JAMES BRADSHAW, <br><br> Plaintiff, <br><br> v. <br><br> NANCY DAHLSTROM, et al., <br><br> Defendants. | Case No. 3:20-cv-00292-SLG-KFR |

## ORDER RE FINDINGS AND RECOMMENDATIONS

Before the Court is Defendant Nancy Dahlstrom's Motion to Dismiss Plaintiff's Second Amended Complaint.[1] Plaintiff Joshua Bradshaw responded in opposition to the motion.[2] Also before the Court is Mr. Bradshaw's Motion to Compel.[3] Defendant Dahlstrom responded in opposition to the motion, and Mr. Bradshaw filed supplemental information relating to the motion.[4]

These matters were referred to the Honorable Magistrate Judge Kyle F. Reardon. Judge Reardon issued his Findings and Recommendations, in which he recommended that the Motion to Dismiss be granted and that, if the District Court

---

[1] Docket 56. Ms. Dahlstrom is no longer the Commissioner of DOC. *See generally* Docket 71, pp. 3-4, notes 18, 21.

[2] Docket 63.

[3] Docket 64.

[4] Dockets 66 and 67.

adopts that recommendation, the Motion to Compel be denied as moot because the case no longer contains a live controversy.[5]  Mr. Bradshaw filed objections to the Magistrate Judge's report and Defendant filed a response in support of the report.[6]

In addition, at Docket 69, Mr. Bradshaw filed a motion seeking to hold Defendants in contempt.  The Magistrate Judge issued an order recommending the motion be denied at Docket 78; no objections to that report have been filed.

These matters are now before this Court pursuant to 28 U.S.C. § 636(b)(1). That statute provides that a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."[7]  A court is to "make a de novo determination of those portions of the magistrate judge's report or specified proposed findings or recommendations to which objection is made."[8]  However, § 636(b)(1) does not "require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."[9]

---

[5] Docket 71.

[6] Dockets 73 and 77.

[7] 28 U.S.C. § 636(b)(1).

[8] *Id.*

[9] *Thomas v. Arn*, 474 U.S. 140, 150 (1985); *see also United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).

Case No. 3:20-cv-00292-SLG-KFR, *Bradshaw v. Dahlstrom, et al.*
Order re Findings and Recommendations
Page 2 of 14

Mr. Bradshaw asserts that Defendant Dahlstrom violated his constitutional right to freedom of religion by enacting a policy that restricted his ability to attend group religious activities during the COVID-19 pandemic.[10] The Magistrate Judge recommended that the Court grant the Motion to Dismiss Plaintiff's Second Amended Complaint and deny Plaintiff's Motion to Compel, after concluding that "Plaintiff's Second Amended Complaint fails to state how Commissioner Dahlstrom personally participated in the deprivation of his rights."[11] The Magistrate Judge also recommended that since Mr. Bradshaw had "been given multiple opportunities to correctly plead his complaint," and that the deficiencies "cannot be cured by further amendment," the dismissal should be without leave to amend.[12] In his objections, Mr. Bradshaw asserts that he can cure these deficiencies. He cites to the doctrine of supervisory liability, and maintains that the former Commissioner's adoption of the COVID restrictions constituted "the moving force of a constitutional violation."[13] For supervisory liability to attach, "the policy itself [must constitute] a repudiation of constitutional rights"; Mr. Bradshaw maintains that the former Commissioner's personal participation is not required.[14] He has simultaneously

---

[10] Docket 54 at 3.

[11] Docket 71 at 11.

[12] Docket 71 at 10.

[13] Docket 73 at 4 (quoting *Hansen v. Black,* 885 F.2d 642, 645-46 (9th Cir. 1989).

[14] *Hansen*, 885 F. 2d at 646 (quoting *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987).

Case No. 3:20-cv-00292-SLG-KFR, *Bradshaw v. Dahlstrom, et al.*
Order re Findings and Recommendations
Page 3 of 14
Case 3:20-cv-00292-SLG-KFR   Document 79   Filed 04/25/23   Page 3 of 14

filed a motion to file a proposed Third Amended Complaint that he maintains remedies the deficiencies that the Magistrate Judge identified, and therefore, he argues, the dismissal of the Second Amended Complaint should be without prejudice.[15]

On de novo review, the Court finds that Mr. Bradshaw's Second Amended Complaint fails to state a viable First Amendment claim. For the reasons discussed below, the Court agrees with the Magistrate Judge that amendment would be futile and will not grant leave to amend.

## I. Individual Capacity Liability

Mr. Bradshaw brings his claims against the former Commissioner in her individual capacity. Individual capacity liability, also referred to as personal liability or personal capacity liability, may impose liability, including liability for damages, when a plaintiff proves that a "government-official defendant, through the official's own individual actions, has violated the Constitution."[16] In order to sufficiently plead an individual capacity claim against a supervisor under 42 U.S.C. § 1983, a plaintiff must allege "personal involvement in the constitutional deprivation, or ... a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."[17]

---

[15] Docket 74.

[16] *Iqbal,* 556 U.S. at 676.

[17] *Keates v. Koile,* 883 F.3d 1228, 1242–43 (9th Cir. 2018) (quoting *Starr v. Baca,* 652 F.3d 1202, 1207 (9th Cir. 2011) (internal quotation marks omitted)).

Case No. 3:20-cv-00292-SLG-KFR, *Bradshaw v. Dahlstrom, et al.*
Order re Findings and Recommendations
Page 4 of 14
Case 3:20-cv-00292-SLG-KFR   Document 79   Filed 04/25/23   Page 4 of 14

Mr. Bradshaw is correct that supervisors may be liable "even without overt personal participation if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."[18] However, it is not enough to allege that a supervisor implemented a policy that may have infringed on a plaintiff's constitutional rights.[19] Rather, a prison policy that burdens a constitutional right is permissible so long as "it is reasonably related to legitimate penological interests" and "does not represent an exaggerated response to those concerns."[20] When determining whether a policy is reasonably related to legitimate penological interests, "[t]he burden is not on the State to prove the validity of prison regulations but on the prisoner to disprove it."[21]

## II. Prison Policies during the Pandemic

The "operation of a correctional institution is at best an extraordinarily difficult undertaking."[22] But that "undertaking is particularly difficult where… prison officials are grappling with a global pandemic."[23] Guards, inmates, and administrators

---

[18] Docket 73 at 4 (internal citations and quotations omitted).

[19] *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011); *see also Lacey v. Maricopa County*, 693 F.3d 896, 915-16 (9th Cir. 2012) (discussing culpability and intent of supervisors).

[20] *Turner v. Safley*, 482 U.S. 78, 89 (1987).

[21] *Overton*, 539 U.S. at 132.

[22] *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974).

[23] *Singleton v. Cal. Dep't of Corr. & Rehab.*, 2020 WL 6587657 at *2 (C.D. Cal. 2020*). See also Martinez v. Sherman,* 2022 WL 126054 at 6 (E.D. Cal. Jan. 13, 2022) ("It is clear that COVID-19 poses a substantial risk of serious harm.") (citations omitted); *Fuller v. Houston,* 2021 WL 6496742

Case No. 3:20-cv-00292-SLG-KFR, *Bradshaw v. Dahlstrom, et al.*
Order re Findings and Recommendations
Page 5 of 14
Case 3:20-cv-00292-SLG-KFR   Document 79   Filed 04/25/23   Page 5 of 14

have all been affected by the proper allocation of a prison's limited resources during the global pandemic. Courts should be "particularly deferential to the informed discretion of corrections officials, especially when the accommodation of a constitutional right would "have a significant 'ripple effect' on fellow inmates or prison staff."[24]

Moreover, prison officials have a constitutional obligation to protect inmates from serious communicable diseases, such as the COVID-19 pandemic.[25] Prison officials also have a legitimate interest in getting inmates to their work and educational assignments;[26] and physical exercise "is one of the most basic human necessities protected by the Eighth Amendment."[27] Accordingly, particularly in the midst of a pandemic, prison officials must be " 'accorded wide-ranging deference in the adoption and execution of policies and practices that are needed . . to preserve internal order and to maintain institutional security.' "[28]

---

at 4 ("There is absolutely no question that COVID-19 is a serious communicable disease.") (citations omitted); *Plata v. Newsom,* 445 F. Supp. 3d 557, 559 (N.D. Cal. 2020) ("The COVID-19 pandemic is 'unprecedented,' and no one questions that it poses a substantial risk of serious harm to [prisoners].")

[24] *Appel v. King Cnty.,* 2023 WL 2529443 at *10 (W.D. Wash., 2023), *report and recommendation adopted,* 2023 WL 2527100 (W.D. Wash. Mar. 15, 2023) (internal citations and quotations omitted).

[25] *See Helling,* 509 U.S. at 33; *Fuller v. Houston,* 2021 WL 6496742, at *3 (C.D. Cal. Nov. 19, 2021), adopted, 2022 WL 225671 (C.D. Cal. Jan. 25, 2022).

[26] *See Mayweathers*, 258 F.3d at 938.

[27] *Thomas*, 611 F.3d at 1151–52 (quotation omitted).

[28] *Singleton v. Cal. Dep't of Corr. & Rehab.*, 2020 WL 6587657, at *2 (C.D. Cal. Apr. 3, 2020) (quoting *Bell v. Wolfish*, 441 U.S. 520, 527 (1979)); *see also Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 326 (2012) ("The difficulties of operating a

Case No. 3:20-cv-00292-SLG-KFR, *Bradshaw v. Dahlstrom, et al.*
Order re Findings and Recommendations
Page 6 of 14
Case 3:20-cv-00292-SLG-KFR   Document 79   Filed 04/25/23   Page 6 of 14

## III. COVID-19 Policies Restricting Religious Activities in Prison

Outside of the prison context, the Supreme Court has held that a state's restrictions on private at-home religious gatherings during the COVID-19 pandemic that treated comparable secular activities more favorably was subject to strict scrutiny review and likely unconstitutional.[29] But in the prison context, a court's review of prison policies that restrict constitutional rights "is highly deferential, and it often requires [courts] to uphold rules that, in contexts not involving prisons, would plainly violate the First Amendment."[30] Further, the Supreme Court has observed that "freedom of association is among the rights least compatible with incarceration."[31] In sum, the right to exercise one's religious beliefs in prison, particularly during a pandemic, "is necessarily limited by the fact of incarceration and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security."[32]

---

detention center must not be underestimated by the courts.").

[29] *See, e.g., Tandon v. Newsom,* 209 L. Ed. 2d 355 (2021) (requiring "[c]omparability of gatherings for secular and religious activities, so that strict scrutiny for a violation of the Free Exercise Clause is triggered if the government treats a comparable secular activity more favorably, is concerned with the risks various activities pose, not the reasons why people gather").

[30] *Prison Legal News v. Ryan*, 39 F.4th 1121, 1128 (9th Cir. 2022); *see also O'Lone,* 482 U.S. at 349 (alleged infringements of prisoners' free exercise rights under the First Amendment must be "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights").

[31] *Jones v. N. Carolina Prisoners' Lab. Union, Inc.,* 433 U.S. 119 (1977).

[32] *McElyea*, 833 F.2d at 197 (citing *O'Lone*, 482 U.S. at 348). *See also, e.g., United States v. Berrios*, 2020 WL 4451165 at 3 (D. Or. Aug. 3, 2020) (rejecting claim that prison lockdowns during COVID-19 pandemic violated due process, as such lockdowns were imposed to prevent the spread of the virus, not to punish inmates); *Cardenas-Ornelas v. Wickham,* 2021 WL 1907827,

Case No. 3:20-cv-00292-SLG-KFR, *Bradshaw v. Dahlstrom, et al.*
Order re Findings and Recommendations
Page 7 of 14
Case 3:20-cv-00292-SLG-KFR   Document 79   Filed 04/25/23   Page 7 of 14

To state a free exercise claim under the First Amendment, a prisoner must plausibly allege facts that demonstrate that a defendant substantially burdened the practice of his religion, "by preventing him from engaging in conduct mandated by his faith, without any justification reasonably related to legitimate penological interests."[33] To be considered a "substantial burden," the challenged state action must "place more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs."[34]

### IV. Plaintiff's Allegations

Mr. Bradshaw maintains his rights to free exercise of his religion and his freedom of association were curtailed by COVID-19 restrictions put in place by former Commissioner Dahlstrom. However, Mr. Bradshaw has not pled facts that, if proven, would demonstrate that he was substantially burdened by these policies. Mr. Bradshaw states he "prays daily and excercizes [sic] his faith by following gods

---

at *3 (D. Nev. May 11, 2021) (dismissing allegations challenging policies requiring "lockdown" and restricting religious services but allowing prisoner to work in a crowded warehouse with other inmates); *Cruz,* 405 U.S. at 322 n. 2 ("A special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand.").

[33] *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled in part on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008).

[34] *Ohno v. Yasuma*, 723 F.3d 984, 1011 (9th Cir. 2013) (quoting *Guru Nanak Sikh Soc'y of Yuba City v. Cnty. of Sutter*, 456 F.3d 978, 988 (9th Cir. 2006) (internal quotation marks and alterations omitted)).

Case No. 3:20-cv-00292-SLG-KFR, *Bradshaw v. Dahlstrom, et al.*
Order re Findings and Recommendations
Page 8 of 14
Case 3:20-cv-00292-SLG-KFR   Document 79   Filed 04/25/23   Page 8 of 14

[sic] word and spreading the good news to other inmates and to anyone who will listen."[35] Further, he acknowledges that as the "case has progressed through the federal court, the Commissioner and Governor have allowed limited education center and program access, limited religious services for Christians [ ], and limited visiting."[36] Further, even before contact visits were reinstated, he alleges that "members from the public [were] allowed access to prisoners for religious service."[37] While Mr. Bradshaw repeatedly filed grievances regarding the restrictions on group religious activities,[38] he made no assertions he was denied the opportunity to pray, follow God's word, or spread God's word.[39] Nor has Mr. Bradshaw alleged facts that the policy denied him "a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners."[40] Instead, Mr. Bradshaw claimed that all church services prayer groups, devotional

---

[35] Docket 10 at 4.

[36] Docket 28 at 7.

[37] Docket 28 at 8.

[38] *See, e.g.,* Dockets 7-2 at 1; 7-4 at 7, 10 at 3-4, 11 at 2, 74-2 at 18.

[39] *Compare Ward*, 1 F.3d at 878 (concluding that where prison officials deprived Orthodox Jewish prisoner of kosher diet, a rabbi, and religious services, prisoner's ability to participate in religious observances was significantly circumscribed within prison, as the prisoner had only limited alternative means available to him to practice his religion), *with id.* at 880 (concluding that prisoner's request to never be transported on the Sabbath was not reasonable because prisoner had many opportunities to observe the Sabbath and prison has a legitimate penological interest in having a standardized, efficient transportation system), *and Van Wyhe v. Reisch,* 581 F.3d 639, 657-58 (8th Cir. 2009) (finding that religious practice was not substantially burdened where prison permitted the inmate a reasonable opportunity to engage in religious activities even though the inmate was not permitted to access certain religious material).

[40] *Cruz,* 405 U.S. at 322.

Case No. 3:20-cv-00292-SLG-KFR, *Bradshaw v. Dahlstrom, et al.*
Order re Findings and Recommendations
Page 9 of 14
Case 3:20-cv-00292-SLG-KFR   Document 79   Filed 04/25/23   Page 9 of 14

service meetings, Bible studies as well as faith-based Narcotics Anonymous and Alcoholics Anonymous group meetings were prohibited.[41]

But even if Defendant Dahlstrom had implemented a COVID-19 policy and Mr. Bradshaw could plead facts showing that the policy imposed a substantial burden on his religious exercise, Mr. Bradshaw would also need to plausibly alleged facts that, if proven, would demonstrate that the policy is not "reasonably related to legitimate penological interests." Whether a policy is reasonably related to such interests requires consideration of the four-factor test established by the Supreme Court in *Turner v. Safley*.[42] These factors are: (1) whether there is a "'valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it," (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether there are "ready alternatives" to the prison's policy.[43] Applying these factors, courts have upheld policies restricting religious gatherings in prisons, such as policies prohibiting inmate-led religious services,[44] denying sectarian services in favor of

---

[41] Docket 54 at 4; *see also* Docket 74-3 at 17-19.

[42] 482 U.S. 78 (1987).

[43] *Turner,* 482 U.S. at 90.

[44] *See Anderson*, 123 F.3d at 1198–99; see also *Ward*, 1 F.3d at 880 (prison officials have no affirmative obligations to provide appropriate clergy for inmates).

Case No. 3:20-cv-00292-SLG-KFR, *Bradshaw v. Dahlstrom, et al.*
Order re Findings and Recommendations
Page 10 of 14

Case 3:20-cv-00292-SLG-KFR   Document 79   Filed 04/25/23   Page 10 of 14

generic congregate services,[45] and preventing attendance at sweat-lodge ceremonies.[46]

Applying the *Turner* factors here, Mr. Bradshaw's claim is insufficient to proceed. The first *Turner* factor weighs in Defendant's favor, since there is a valid, rational connection between a policy suspending religious gatherings during a pandemic and the legitimate governmental interest of protecting the health and safety of inmates, guards and others at the prison.[47] Under the second *Turner* factor – availability of alternatives – "[t]he relevant inquiry … is not whether the inmate has an alternative means of engaging in the particular religious practice that he or she claims is being affected; rather, [the court must] determine whether the inmates have been denied all means of religious expression."[48] Mr. Bradshaw has not alleged facts that he was restricted from "generally engag[ing] in

---

[45] *See Watkins, supra*; *Jones v. Shabazz*, 2007 WL 2873042, at 20 (S.D. Tex. 2007) (holding that plaintiff was allowed a reasonable opportunity to practice his religion; prison's structure of grouping multiple sects under the umbrella of Islam was reasonably related to legitimate penological interests); *Boxer X v. Donald*, 169 Fed. Appx. 555, 2006 WL 463243, *3-4 (11th Cir. 2006) (no free exercise or equal protection violations when prison denied sectarian services and instead provided congregational religious services based on "generic abstractions" of actual denominational faiths); *Smith v. Cooley*, 2017 WL 5178920, at *3 (W.D. La. 2017), adopted at 2017 WL 5178820 (W.D. La. Nov. 7, 2017) (no free exercise violation where Nation of Islam inmate was denied separate Muslim service).

[46] *Standing Deer v. Carlson*, 831 F.2d 1525, 1528–29 (9th Cir. 1987).

[47] *Cf. Burrage v. Lee County*, 2021 WL 1343510, at *1 (N.D. Miss. Mar. 23, 2021) (finding that restricting access to visitors because of Covid-19 "without question ... constitutes a legitimate penological objective" (citing *Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020)).

[48] *Ward*, 1 F.3d at 877 (citing *O'Lone*, 482 U.S. at 351–52).

Case No. 3:20-cv-00292-SLG-KFR, *Bradshaw v. Dahlstrom, et al.*
Order re Findings and Recommendations
Page 11 of 14
Case 3:20-cv-00292-SLG-KFR   Document 79   Filed 04/25/23   Page 11 of 14

worship."⁴⁹ On the third *Turner* factor, the Court must give substantial deference to prison officials regarding the impact on guards, inmates, and resource allocation.⁵⁰ Faced with the highly contagious and potentially deadly nature of the virus, staffing shortages, enhanced sanitation procedures, and "the 'inordinately difficult undertaking' that is modern prison administration,"⁵¹ accommodating Mr. Bradshaw's request for religious gatherings would have had a substantial impact. Finally, with respect to the fourth *Turner* factor – the ready presence of alternative prison policies – Mr. Bradshaw bore the burden of demonstrating alternatives that the State could have readily employed but has failed to meet that burden. Accordingly, Mr. Bradshaw's allegations are insufficient to state a First Amendment claim against Defendant Dahlstrom on a supervisory theory of liability.

## V.     Amendment is Futile and the Motion to Compel is Moot

On March 3, 2023, Mr. Bradshaw filed a Motion for Leave to File a Third Amended Complaint.⁵² Mr. Bradshaw attached a Third Amended Complaint that

---

⁴⁹ *Firewalker-Fields v. Lee,* 58 F.4th 104, 111 (4th Cir. 2023) ("this is not about whether Firewalker-Fields had the opportunity to engage in Friday Prayer on his terms, but rather whether he could generally engage in worship."). *See also Ford v. Northam et al*., 2023 WL 2767780, at *13 (W.D. Va. 2023) (Other than stating that he has been unable to gather with his religious community, Plaintiff failed to provide sufficient factual matter to establish that any defendant "imposed a substantial burden" on his religious exercise).

⁵⁰ *Overton v. Bazzetta*, 539 U.S. 126, 135 (2003). *See also Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington,* 566 U.S. 318, 326 (2012) (recognizing that prison officials "must have substantial discretion to devise reasonable solutions to the problems they face").

⁵¹ *Thornburgh,* 490 U.S. at 407 (quoting *Turner,* 482 U.S. at 85).

⁵² Docket 74.

Case No. 3:20-cv-00292-SLG-KFR, *Bradshaw v. Dahlstrom, et al.*
Order re Findings and Recommendations
Page 12 of 14

he maintains remedies the deficiencies and properly states a claim against Defendant Dahlstrom in her individual capacity.[53] However, upon review, the Third Amended Complaint suffers from the same deficiencies. Because amendment would be futile, the Court will not grant additional leave to amend.[54] Relatedly, the Motion to Compel is moot because there is no actionable controversy to proceed.

### VI. Motion for Contempt

No objections were filed to this motion; therefore, the Court adopts it in its entirety.

### CONCLUSION

For the foregoing reasons, on de novo review, the Court ADOPTS the Magistrate Judge's Findings and Recommendations as set forth at Docket 71, as modified herein. The motion to dismiss at Docket 56 is GRANTED with prejudice and without leave to amend. The motion to compel at Docket 64 is DENIED as moot.

The Court also ADOPTS in its entirety the Report and Recommendation regarding the contempt motion at Docket 78 and the motion for contempt at Docket 69 is DENIED.

---

[53] Docket 74 at 2.

[54] *AE*, 666 F.3d at 636 ("A district court abuses its discretion by denying leave to amend unless amendment would be futile or the plaintiff has failed to cure the complaint's deficiencies despite repeated opportunities."); *see, e.g., Fid. Fin. Corp. v. Fed. Home Loan Bank of S.F.,* 792 F.2d 1432, 1438 (9th Cir. 1986) ("The district court's discretion to deny leave to amend is particularly broad where the court has already given the plaintiff an opportunity to amend his complaint.").

Case No. 3:20-cv-00292-SLG-KFR, *Bradshaw v. Dahlstrom, et al.*
Order re Findings and Recommendations
Page 13 of 14
Case 3:20-cv-00292-SLG-KFR   Document 79   Filed 04/25/23   Page 13 of 14

The Clerk of Court is instructed to enter a final judgment accordingly.[55]

DATED this 25th day of April, 2023, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[55] To the extent that Mr. Bradshaw sough declaratory relief on official capacity claims against the Commissioner of DOC, the Second Amended Complaint also fails to state a viable claim in this regard.

Case No. 3:20-cv-00292-SLG-KFR, *Bradshaw v. Dahlstrom, et al.*
Order re Findings and Recommendations
Page 14 of 14
Case 3:20-cv-00292-SLG-KFR   Document 79   Filed 04/25/23   Page 14 of 14